UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
                              )
IN RE SPECTRUM BRANDS, INC.   )
SECURITIES LITIGATION         )          1:05-CV-02494-WSD
_____)

**PLAINTIFFS' MOTION TO CLARIFY THE SCOPE OF
CONFIDENTIALITY AGREEMENTS, OR IN THE ALTERNATIVE TO
PARTIALLY LIFT STAY OF DISCOVERY, AND FOR AN EXTENSION
OF TIME TO FILE SECOND AMENDED COMPLAINT AND
<u>MEMORANDUM IN SUPPORT</u>**

**I.  INTRODUCTION**

Lead Plaintiffs respectfully request: (1) an order limiting the scope of the confidentiality/severance agreements between Spectrum Brands Incorporated ("Spectrum" or the "Company") and its former employees; and (2) a 45-day extension from the date of entry of an Order on this Motion within which to file a Second Amended Complaint.  Alternatively, Plaintiffs seek a partial lift of the discovery stay in order to take limited discovery from witnesses who have confirmed that defendants issued false statements to the investing public.

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), plaintiffs alleging securities fraud are required to plead with particularity both falsity and scienter without the benefit of discovery.   As a result,

1

investors are in the disadvantaged position of having to investigate fraud (invariably carried out behind closed doors) without the aid of legal process, yet having to comply with pleading requirements that mandate exacting specificity. To this end, Plaintiffs have been conducting an investigation that includes voluntary interviews with former employees of Spectrum. Certain of the witnesses contacted have expressed a willingness to answer questions regarding the alleged fraud, but are reluctant to do so because of confidentiality agreements which they believe preclude participation in such interviews. As detailed in the attached Affidavits of Wolfram Worms and David Hirsch (Exs. A,B), numerous witnesses have confirmed that defendants engaged in improper practices, including channel stuffing or "loading."

As a result of defendants' accounting fraud and failure to disclose the impact of their channel stuffing, Plaintiffs allege that Spectrum's stock price was artificially inflated. ¶¶ 3-7. [1] When the truth was revealed that sales of batteries were much lower than previously disclosed, the stock price dropped dramatically. ¶¶104-110.

Former employees have verified that defendants "always found a way to make the quarter" even if it meant resorting to fraud. ¶¶17-24. Now, Plaintiffs are

---

[1] All paragraph references are to Plaintiffs' Amended Complaint. [D.E. 28]

faced with a situation where class members have sustained millions in damages and former employees have confirmed that a fraud occurred, but are currently unable to plead the details of the fraud as required by the PSLRA and this Court's Order[2] because former employees, fearing legal repercussion, are afraid to reveal such details to plaintiffs' investigators.  Plaintiffs request this Court's intervention to assure former employees who have knowledge of defendants' fraudulent practices that they will not suffer retribution, lose their severance benefits or violate existing confidentiality agreements for exposing defendants' violations of securities laws.

Alternatively, Plaintiffs request a partial lift of the discovery stay.  The PSLRA's discovery stay, intended to prevent "fishing expeditions" in frivolous lawsuits, is not applicable here.   Plaintiffs are not seeking unlimited discovery in the hopes of proving that fraud occurred, rather plaintiffs are seeking a partial lift of the stay in order to depose witnesses who have confirmed that they know the intricacies of defendants' fraud, but refuse to reveal the information without a subpoena.

Finally, Plaintiffs request an extension of 45 days from entry of an Order on this Motion, within which to file a Second Amended Complaint.  In the event that

---

2 Order granting defendants' motion to dismiss, dated October 26, 2006 [D.E. 36].

this Court grants the relief requested, this brief extension will enable Plaintiffs to either conduct limited discovery, or to inform former employees who are fearful of retribution for cooperating in informal discovery that they may do so without legal repercussion.

Further, the requested extension is necessary in order for Plaintiffs to analyze recent news concerning Spectrum. Specifically, on November 14, 2006, defendants announced a $433 million goodwill write-off, which may confirm many of the class period allegations.

Faced with a similar situation where former employees believed they were legally prohibited from cooperating in an ongoing investigation, the Court in Latourette vs. First Horizon Pharm. Corp., Case No. 1:02-CV-2332-JOF (N.D. Ga. 2002) (Forrester, J) (Tr. of 7/31/03 oral argument) (Ex. C), granted relief to plaintiffs. In that case, the severance agreements at issue precluded the disclosure of any nonpublic information. The Court issued an order requiring defense counsel to send letters to former employees, indicating that the overbroad provision of the severance agreement was unenforceable, and that witnesses would not face legal action if they cooperated with the securities fraud investigation. See, Tr. at 43.

## II. BACKGROUND

### A. The Amended Complaint and the Dismissal Order

The Amended Complaint alleges that Spectrum's corporate mantra was an undisclosed practice of channel stuffing. ¶¶3-7, 20-38. During the fourth quarter of 2004 and the first quarter of 2005, defendants engaged in pervasive channel stuffing. ¶18. Defendants gave customers, including Best Buy, Menards, Wal-Mart and others, deep discounts and special payment terms in order to induce them to order unwanted products. ¶20. For example, defendants "front-loaded" Wal-Mart because Spectrum "needed to make the [quarterly] numbers." ¶34. Defendants failed to disclose the impact that channel stuffing would have on future sales and earnings. ¶23. Moreover, defendants knew and directed the channel stuffing at Spectrum. According to one former employee, Defendant Jones knew in February 2005 that the Company would not make its 2005 earnings numbers because the channel had been stuffed. During the Class Period and prior to disclosure of the Company's earnings miss, ***defendants sold 224,367 shares of Spectrum stock for nearly $9 million at prices as high as $42.66 per share.*** This suspicious selling has resulted in an SEC investigation.

In addition, defendants also engaged in improper revenue recognition by shipping goods regardless of whether customers had ordered them. ¶¶36-38. A

5

former Spectrum Director referred to this practice as "mortgaging [Spectrum's] future to meet monthly and quarterly goals." ¶37.

On October 27, 2006, this Court granted Defendants' motion to dismiss. This Court found that the allegations raised "suspicions" about defendants Steward and Jones, and raised "serious questions about [defendants'] management and integrity." Order at 51. Nonetheless, this Court found that under the holding in Garfield v. NDCHealth Corp., 2006 WL 2883238, **3-4 (11th Cir. Oct. 12, 2006), the allegations were not sufficiently particularized to give rise to a strong inference of scienter. Id. This Court found that Plaintiffs failed to allege sufficient particularity regarding the fraudulent scheme, including specific dates, transactions, customer names, and other details. Order at 32-36. Plaintiffs were granted thirty days to file a second amended complaint.

### B.   Plaintiffs' Investigation

Pursuant to Plaintiffs' obligation to plead their case with particularity as mandated by the PSLRA, Plaintiffs have been engaged in an ongoing investigation of their claims, which included contacting and interviewing former employees of Spectrum. To date, Plaintiffs have contacted and interviewed several former employees through investigators. Several of these former employees have voluntarily provided information regarding the Company's internal workings,

especially with respect to Spectrum's sales efforts and strategies, which paints a picture of Spectrum in stark contrast to that publicly portrayed by Defendants.

After the dismissal of the action, Plaintiffs renewed their investigation, and contacted numerous additional former employees who had left the Company subsequent to the filing of the Amended Complaint. At least six of these former employees, however, have stated that they could and would provide information pertinent to Plaintiffs' fraud investigation but for concerns that their severance benefits from Spectrum will be adversely impacted, or that they will violate their confidentiality agreements and incur legal retribution from the Company.

Plaintiffs have every reason to believe that, absent these concerns, a wealth of information pertaining to Plaintiffs' allegations in this case remains to be discovered via informal, voluntary interviews with Spectrum's former employees. For example, a former Spectrum Manager ("CW1")[3] confirmed that CW1 left Spectrum for "ethical concerns" about what she was being asked to do. See Hirsch Aff. at 2. CW1 revealed that Spectrum engaged in unusual and undisclosed end of quarter sales practices, such as giving extended terms and rights of return to customers. Id. Huge shipments were followed up the next quarter with "big returns" at the end of the quarter. Id. Another former employee confirmed that

---

3  "CW" refers to confidential witness.

Spectrum engaged in channel stuffing and that he could "be very helpful" to Plaintiffs' investigation, yet declined to provide the information since he felt bound by severance and confidentiality agreements.  Id.

## III.  ARGUMENT

### A.  The Confidentiality Agreements Should Be Clarified.

Plaintiffs have not obtained a copy of the confidentiality agreements at issue; however, upon speaking with some former employees, Plaintiffs believe that the agreements may preclude the disclosure of any "nonpublic" information.  The former employees at issue believe (whether correctly or not) that the confidentiality agreements prohibit the revelation of *any* nonpublic information, including securities fraud.  These former employees believe that cooperation with Plaintiffs' investigators could subject them to legal action.  In addition, former employees believe that cooperation in the investigation could jeopardize their severance benefits due from Spectrum.

If Spectrum's confidentiality/severance agreements go beyond protecting the Company's legitimate interests, they should be limited in scope so as not to prevent former employees from voluntarily providing non-privileged information

about alleged securities fraud.[4]  The JDS Uniphase court held that the defendants could not use confidentiality agreements to shield themselves from the plaintiffs' investigation by adverting to broad language in order to chill disclosure by former employees.  See 238 F. Supp. 2d at 1138.  In support of its decision, the court quoted the Chambers court's observation that:

> Absent possible extraordinary circumstances not present here, it is against public policy for parties to agree not to reveal, at least in the limited contexts of depositions or pre-deposition interviews concerning litigation arising under federal law, facts relating to alleged or potential violations of such law.

Id. at 1135 (quoting Chambers, 159 F.R.D. at 444).  The JDS Uniphase court also relied on language from McGrane, which held that "[d]isclosures of wrongdoing do not constitute revelations of trade secrets which can be prohibited by agreements binding on former employees[,]" and "[c]ourts are increasingly reluctant to enforce secrecy arrangements where matters of substantial concern to the public [e.g., securities fraud]–as distinct from trade secrets or other legitimately confidential information–may be involved."  Id. at 1136 (quoting McGrane, 822 F. Supp. at 1052, 1046).

---

[4] See In re JDS Uniphase Corp. Sec. Litig., 238 F. Supp. 2d 1127, 1135-36 (N.D. Cal. 2002) (relying on Chambers v. Capital Cities/ABC, 159 F.R.D. 441 (S.D.N.Y. 1995); McGrane v. The Reader's Digest Assoc., Inc., 822 F. Supp. 1044 (S.D.N.Y. 1993)); see also Restatement (Second) of Contracts § 178 (1981) (a contract is unenforceable if contrary to public policy).

Furthermore, the JDS Uniphase court recognized that "Congress has also indicated a public policy in favor of whistleblowers in securities cases. The recently enacted Sarbanes-Oxley Act of 2002 [18 U.S.C. § 1514A(a)(1)] prohibits companies from discriminating against employees because of any lawful act by the employee to assist in an investigation of securities fraud." Id. The court opined that "the statute demonstrates the public policy in favor of allowing *even current employees* to assist in securities fraud investigations." Id. (emphasis added).

Even if the confidentiality and severance agreements at issue do not specifically preclude participation in informal interviews of this nature, numerous employees believe that they do. Accordingly, Plaintiffs respectfully request that this Court enter an Order clarifying that willing former employees may voluntarily disclose information pertinent to this case without fear of a retributive lawsuit by Spectrum, provided that such disclosures do not encroach upon Defendants' legitimate interests or privilege.

**B.     In The Alternative, Plaintiffs Will Suffer Undue Prejudice If They Are Not Permitted To Engage In Limited Discovery.**

In the event the Court does not deem it necessary to issue an order clarifying that the confidentiality agreements at issue do not preclude participation in voluntary interviews with Plaintiffs' investigators, Plaintiffs respectfully request

10

that they be allowed to conduct limited discovery with respect to former employees' knowledge pertinent to the allegations in this case.

The PSLRA's stay of discovery was intended to relieve defendants of burdensome "fishing expeditions," not shield them from potentially damaging disclosures by third parties. A number of courts have granted a partial lift of the discovery stay under very similar circumstances in order to avoid undue prejudice to plaintiffs.[5] In Anderson, the court partially lifted the stay of discovery so that the plaintiffs could depose certain third parties who possessed information relevant to their allegations but were unwilling to be interviewed because of a confidentiality agreement. Discussing the rationale for its decision, the court opined:

> Being cognizant of the exceptional circumstances required to lift the stay of discovery in such cases, the court nevertheless finds that, due to the confidentiality agreement that has precluded Plaintiffs from obtaining specific information prior to filing their Complaint, Plaintiffs in this case will suffer undue prejudice if they are not permitted to conduct their requested limited discovery of these third party individuals. Because Plaintiffs have articulated their alleged bases of liability, such discovery will not result in a fishing expedition.

---

[5] See Anderson v. First Security Corp., 157 F. Supp. 2d 1230, 1242 (D. Utah 2001); Vacold LLC v. Cerami, 2001 WL 167704, *6 (S.D.N.Y. 2001) (citing Global Intellicom, Inc. v. Thomson Kernaghan & Co., 1999 WL 223158, *2 (S.D.N.Y. 1999); Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein, 917 F. Supp. 717, 720 (S.D. Cal. 1996)).

157 F. Supp. 2d at 1242.

Consistent with the Anderson court's analysis, Plaintiffs respectfully submit that they should be allowed to conduct limited discovery with respect to third party witnesses. Specifically, Plaintiffs seek to depose six witnesses identified by title in the Hirsch and Worms Affidavits. These witnesses have described improper sales tactics and accounting fraud, but have indicated that they will not provide additional detail due to confidentiality concerns. See Exhs. B-C.

### C. Plaintiffs Should Be Granted An Extension Of Time To File Their Second Amended Complaint.

As detailed above, Plaintiffs' ability to gather additional information required to plead fraud with particularity has been severely hampered by witnesses' fear of legal retribution.

In addition, the extension of time is necessary in order to enable Plaintiffs and their forensic accountants to analyze recent news concerning Spectrum. On November 14, 2006, defendants announced that the Company took an asset impairment charge of $433 million to account for lost goodwill in its brand portfolio. The Company announced that it will be selling off major portions of its assets. This massive charge - - amounting to nearly as much as the Company's current market capitalization - - confirms or is consistent with many of the

allegations in the Amended Complaint.  Accordingly, Plaintiffs request an extension until 45-days subsequent to the date of the Court's ruling on Plaintiffs' instant motion.

## IV.  CONCLUSION

As detailed above, Plaintiffs respectfully request that this Court (a) enter an Order clarifying that Spectrum's confidentiality and severance agreements do not preclude participation in the existing investigation or alternatively permitting limited discovery to go forward; and (b) granting Plaintiffs 45 days from the date of entry of an Order on the instant motion within which to file Plaintiffs' Second Amended Complaint.

## V.  LOCAL RULE 7.1D CERTIFICATION

Counsel for Plaintiffs hereby certify that the text of this Memorandum of Law has been prepared with Times New Roman 14 point, one of the fonts and point selections approved by the Court in Local Rule 5.1B.

**Respectfully submitted,**

/s/ Christopher S. Jones
**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White
Christopher S. Jones
Georgia Bar No. 141843
2424 North Federal Highway

Suite 257
Boca Raton, Florida 33431
Tel: (561) 394-3399
Fax: (561) 394-3382

**SCHIFFRIN & BARROWAY, LLP**
Christopher Nelson
280 King of Prussia Rd.
Radnor, PA  19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

**Lead Counsel for Plaintiffs**

**CHITWOOD HARLEY HARNES LLP**
Martin D. Chitwood
Georgia Bar No. 124950
Meryl W. Edelstein
2300 Promenade II
Atlanta, GA  30309
Tel:  (404) 873-3900
Fax:  (404) 876-4476

**Liaison Counsel for Plaintiffs**

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the 22nd day of November, 2006, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.  I further certify that on the same date I mailed the foregoing document to counsel of record on the attached Service List.

                                        By:    <u>*s/ Christopher S. Jones*</u>

## SERVICE LIST

| | |
|---|---|
| Christopher Nelson<br>**SCHIFFRIN & BARROWAY, LLP**<br>280 King of Prussia Rd.<br>Radnor, PA  19087<br>Tel:  (610) 667-7706<br>Fax:  (610) 667-7056<br><br>*Co-Lead Counsel for Plaintiffs Sushil-Kumar Jain, David Hunkapiller, and Stanley Davies* | Martin D. Chitwood<br>Meryl W. Edelstein<br>**CHITWOOD HARLEY HARNES, LLP**<br>2300 Promenade II<br>1230 Peachtree Street, NE<br>Atlanta, GA 30309<br>Tel: (404) 873-3900<br>Fax: (404) 876-4476<br><br>*Liaison Counsel for Plaintiffs Sushil Kumar Jain, David Hunkapiller, and Stanley Davies* |
| **LAW OFFICES OF BRUCE G. MURPHY**<br>Bruce G. Murphy<br>265 Llwyds Lane<br>Vero Beach, FL 32963<br>Tel: (828) 737-0500<br>Fax: (828) 737-0528<br><br>*Counsel for Plaintiff Sushil Kumar Jain* | Richard A. Lockridge<br>Karen Hansen Riebel<br>Nathan D. Prosser<br>**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**<br>100 Washington Avenue South<br>Suite 2200<br>Minneapolis, MN 55401<br>Tel: (612) 339-6900<br>Fax: (612) 339-0981<br><br>*Counsel for Plaintiff David Hunkapiller* |

| | |
|---|---|
| Guri Ademi<br>**ADEMI & O'REILLY, LLP**<br>3620 E. Layton Avenue<br>Milwaukee, WI  53110<br>gademi@ademilaw.com<br>Tel: (414) 482-8000<br>Fax: (414) 482-8000<br><br>*Counsel for Plaintiff Paul Dague* | Michael S. Hines<br>**SKADDEN ARPS SLATE MEAGHER & FLOM**<br>1440 New York Avenue, N.W.<br>Washington, D.C.  20005<br><br>*Counsel for Defendants* |
| Messrs. Chandler, Wilhelm, Testani<br>**SUTHERLAND ASBIL & BRENNAN**<br>999 Peachtree Street, N.E.<br>Suite 2300<br>Atlanta, GA  30309-3996<br><br>*Counsel for Defendants* | Messrs. Carroll,<br>Peter Simshauser<br>**SKADDEN ARPS SLATE MEAGHER & FLOM**<br>One Beacon Street<br>Boston, MA 02108<br><br>*Counsel for Defendants* |
| | |