## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE SPECTRUM BRANDS, INC.
SECURITIES LITIGATION

**1:05-cv-02494-WSD**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Plaintiffs' Motion to Clarify the Scope of Confidentiality Agreements, Or, in the Alternative, to Partially Lift Stay of Discovery, and For an Extension of Time to File Second Amended Complaint and Memorandum in Support [39] ("Motion for Clarification").

Plaintiffs move for: (i) an order limiting the scope of confidentiality or severance agreements alleged to exist between Defendant Spectrum Brands Inc. ("Spectrum") and its present and former employees, or, alternatively a partial lift of the discovery stay in order to take additional discovery from confidential witnesses; and (ii) a 45-day extension from the date of this Order to file a Second Amended Complaint.

## I.    BACKGROUND

On September 26, 2005, Plaintiff Sushil Kuman Jain, a Spectrum stock holder, filed the present action, alleging securities fraud against Spectrum.  This case was one of seven securities fraud cases filed against Spectrum.  On November 18, 2005, the Court entered an order consolidating the outstanding cases into the present class action suit.  On February 2, 2006, the Lead Plaintiffs, now on behalf of a plaintiff class ("Plaintiffs"), filed an amended consolidated complaint.  The amended consolidated complaint, relying on several confidential informants, alleged that Spectrum engaged in "channel stuffing," that is, that it artificially inflated its quarterly sales numbers by deliberately "stuffing" unreasonable quantities of product into its distribution channels.  This, Plaintiffs claim, misled investors about Spectrum's long term sales performance expectations, adversely affecting its stock price.

Plaintiffs appeared confident in the results of their investigation and in the availability of the information necessary to assert their claims.  Plaintiffs did not, at any time, notify the Court of any difficulties in obtaining information from their confidential informants.  Plaintiffs did not complain or even suggest that their

confidential informants were affected by any confidentiality agreements, or that

their investigation was hindered in any other way.[1]

On March 6, 2006, Spectrum filed a Motion to Dismiss the amended

consolidated complaint.  Plaintiffs contested the motion, relying in part on

information obtained from their confidential informants.  Plaintiffs did not then

complain or suggest that their informants were hindered by confidentiality

_____

[1] Plaintiffs filed their amended consolidated complaint after this Court
issued a significant securities fraud decision in a channel stuffing case. On July 27,
2005, this Court dismissed the complaint in NDC Health Corp. v. Garfield, Case
No. 1:04-cv-0970 (N.D. Ga., July 27, 2005).  Garfield was, like the present case, a
securities fraud case based on allegations of channel stuffing.  The dismissal order
held that allegations of channel stuffing, standing alone, are insufficient to show
scienter as required by the Public Securities Litigation Reform Act, 15 U.S.C. §
78u-4 et. seq. ("PSLRA").  This Court held that Plaintiffs were required to show
specific facts establishing that particular sales were "suspicious and unusual" in the
context of the defendant's normal business operations.  The Court gave the
plaintiffs an opportunity to file an amended complaint.  The plaintiffs chose instead
to allow the amendment deadline to lapse and to appeal the dismissal.  On October
12, 2006, the Eleventh Circuit affirmed this Court's Order.  Garfield v. NDC
Health Corp., 466 F.3d 1255 (11th Cir. 2006).
    This Court issued its order in the Garfield decision nearly five months prior
to Plaintiffs' filing of the amended consolidated complaint in this case.  The
Eleventh Circuit's affirmance was issued more than a month prior to Plaintiffs'
filing of the amended consolidated complaint.  Several of the attorneys
representing the plaintiff class in the present action represented the plaintiff class in
Garfield.  Plaintiffs had actual notice of how this Court and the Eleventh Circuit
interpret the specificity requirements of the PSLRA in channel stuffing cases
before they filed their amended consolidated complaint.

agreements or that their investigation had otherwise been hindered. On October 27, 2006, the Court entered an order granting the Motion to Dismiss and dismissing the amended consolidated complaint without prejudice ("October 27 Order"). The Court found that the amended consolidated complaint failed to plead scienter with the particularity required by the PSLRA. The Court granted Plaintiffs 30 days to file a second amended consolidated complaint. Plaintiffs chose not to do so. Instead, on November 22, 2007, five days prior to the filing deadline imposed by the October 27 Order, Plaintiffs filed the present motion.

The present motion requests the Court to issue an order interpreting the scope of certain confidentiality agreements Plaintiffs now claim impacted their ability to gather the information necessary to satisfy the PSLRA pleading requirements. The content of these alleged agreements is not known to the Court, but Plaintiffs ask the Court to declare that Spectrum cannot enforce them against any current or former employee who volunteers information believed to be related to Plaintiffs' securities fraud claim. In the alternative, Plaintiffs request that the Court lift the automatic discovery stay imposed by the PSLRA so that Plaintiffs can compel the confidential informants to testify. Plaintiffs conclude by requesting

a 45-day extension of time from the date of this order to file a second amended consolidated complaint.

Plaintiffs' requests are inconsistent with the policy underlying the PSLRA. Plaintiffs knew that the PSLRA required them to meet heightened pleading requirements to establish a sustainable claim before discovery could commence. Plaintiffs failed to meet those requirements. Plaintiffs never complained of any impediment to their investigation, and their present motion is based on an inadequate and untimely expression of hope that somewhere, from someone, facts may exist to support their cause of action. The relief requested by Plaintiffs is not supported by any legal authority.

## II.    DISCUSSION

### A.    Motion for Clarification

Plaintiffs first request that the Court "clarify" the scope of confidentiality agreements alleged to exist between Spectrum and its current and former employees. Plaintiffs argue that "[i]f Spectrum's confidentiality/severance agreements go beyond protecting the Company's legitimate interests, they should be limited in scope so as not to prevent former employees from voluntarily providing non-privileged information about alleged securities fraud." (Pls. Mot. to

Clarify at 8-9.)  Plaintiffs allege that six confidential informants have refused to

share potentially relevant information for fear of breaching the scope of these

agreements.  Plaintiffs seek a ruling "reassuring" these confidential informants that

Spectrum cannot punish them for participating in Plaintiffs' investigation.

Plaintiffs have not brought the language of these alleged agreements before the

Court, nor do they claim to have attempted to obtain them.  Plaintiffs have not

provided even a general description of the type of information their alleged

confidential informants would share in the absence of concern about the

confidentiality agreements.  Plaintiffs have not even specified what questions they

seek to ask.

      Plaintiffs do not cite any authority for the proposition the Court can issue an

advisory opinion concerning the scope of an agreement whose provisions are

entirely unknown.  The cases relied on by Plaintiffs are substantially factually

different from the present situation.[2]

      Plaintiffs rely primarily on the magistrate judge's opinion in <u>JDS Uniphase

Corp. Sec. Litig.</u>, 238 F.Supp. 2d 1127 (N.D. Cal. 2002).  <u>JDS</u> is a securities fraud

---

[2]  The Court is unconvinced that it is entitled to apply a judicially-created
exception to the discovery stay mandated by the PSLRA.  Even if a judicially-
created exception would be appropriate in some circumstances, the present case is
not one.

case in which the parties disputed the enforceability of a confidentiality agreement entered into between the defendant company and its employees. Plaintiffs alleged that the confidentiality agreement was overbroad and prevented current and former employees of the defendant from sharing non-confidential information about possible illegal activity. Id. at 1129-31. Plaintiffs raised this issue prior to the entry of any order by the court on the defendant's motion to dismiss. The plaintiffs provided the court with specific proposed questions tailored to discover the particular information that they alleged was being suppressed wrongfully. Id. at 1138.

The parties also brought the disputed provisions of the confidentiality agreement before the magistrate judge.[3] The court concluded that the disputed

---

[3] The disputed provisions of the confidentiality agreement were obviously overbroad. For example, one provision defined the "Proprietary Information" that employees were forbidden from sharing as:

> all information and any idea in whatever form, tangible or intangible, whether disclosed to or learned or developed by me, pertaining in any manner to the business of the Company or to the Company's affiliates, consultants, or business associates, unless (i) the information is or becomes publicly known through lawful means; (ii) the information was rightfully in my possession or part of my general knowledge prior to my employment by the Company; or (iii) the information is disclosed to me without confidential or proprietary restriction by a third party who rightfully possesses the

provisions were legally overbroad, and that they had the effect of prohibiting

employees of the defendant company from discussing anything about the company,

regardless of whether the information was confidential or whether it pertained to

illegal activity.  Id. at 1136-37.

    The present case is substantially different.  Plaintiffs' declarations do not

support the claim that their investigation has been hindered.  Although Plaintiffs'

brief represents that six confidential informants refused to share undescribed

information because of a confidentiality agreement, the declarations of Plaintiffs'

investigators represent only that two confidential informants would share

---

information (without confidential or proprietary
restriction) and did not learn of it, directly or indirectly,
from the Company. I further understand that the
Company considers the following information to be
included, without limitation, in the definition of
Proprietary Information: (A) notebooks, schematics,
techniques, employee suggestions, development tools and
processes, computer printouts, computer programs,
design drawings and manuals, and improvements; (B)
information about costs, profits, markets, and sales; (C)
plans for future development and new product concepts;
and (D) all documents, books, papers, drawings, models,
sketches, and other data of any kind and description,
including electronic data recorded or retrieved by any
means, that have been or will be given to me by the
Company (or any affiliate of it), as well as written or
verbal instructions or comments.

238 F.Supp. 2d at 1130-31.

information (of an undescribed nature) if not for a confidentiality agreement with Spectrum.  Plaintiffs do not allege that the information known to these informants would be useful, relevant, or helpful to their burden to plead scienter with factual specificity, nor do they propose any specific questions that they believe these informants would, with the Court's assistance, be able to answer.

The terms of the confidentiality agreement alleged to hinder Plaintiffs' investigation have not been brought before this Court.[4]  Plaintiffs have not alleged that any part of the agreement is overbroad; they claim only that some of their informants might feel more comfortable if the Court issued an order.  The Court cannot evaluate the scope of an agreement whose provisions are wholly unknown.

Plaintiffs did not allege any problems with their investigation or the disclosure of their informants until nearly a month after this Court dismissed their amended consolidated complaint.  Rather than raise the alleged impediment to their investigation when it arose, as the plaintiffs did in <u>JDS</u>, Plaintiffs in this case waited until after their case had been dismissed, and the amendment deadline was

---

[4]  Plaintiffs admit that they "have not obtained a copy of the confidentiality agreements at issue . . ." (Pls. Mot. to Clarify at 8.)  Plaintiffs do not explain this failure, nor do they represent that they have reviewed the contents of these agreements.

upon them, before alleging that their investigation had been subjected to an

ongoing impediment.

Plaintiffs also rely on <u>Chambers v. Capital Cities/ABC</u>, 159 F.R.D. 441

(S.D.N.Y. 1995) and <u>McGrane v. Reader's Digest Ass'n, Inc.</u>, 822 F.Supp. 1044

(S.D.N.Y. 1993).  Plaintiffs cite <u>Chambers</u> and <u>McGrane</u> for the general

proposition that companies cannot prevent the disclosure of fraudulent or illegal

behavior by instituting broad confidentiality agreements.  Neither of these cases

support Plaintiffs' requests.

<u>Chambers</u> is an age discrimination case.  In <u>Chambers</u>, the parties disagreed

over whether the plaintiff could engage in *ex parte* interviews of the defendant's

current and former employees.  The court affirmed a magistrate judge's findings

that plaintiff's counsel could engage in limited *ex parte* interviews.[5]  <u>Id.</u> at 445.

The court considered the general policy principle that courts should not, absent

extraordinary circumstances, permit confidentiality agreements to muzzle

_____

[5]  Notably, the court in <u>Chambers</u> rejected plaintiff's suggestion that the
court "authorize plaintiff's counsel to tell former employees of defendant that they
need not be concerned about . . . violating any agreement which they may have
entered into to keep silent. . . . The Magistrate Judge wisely refused to permit such
a remedy, which . . . . would put legitimate as well as illegitimate confidentiality
agreements at risk."  <u>Id.</u> at 445.  Plaintiffs in this case seek a remedy similar to that
the <u>Chambers</u> court refused to provide.

employees who wish to discuss potential violations of federal law. The court was also sensitive to the defendant's legitimate interest in maintaining the secrecy of confidential information. The magistrate judge balanced these concerns by placing stringent conditions on *ex parte* interviews of current employees. Id. The court modified this balance by holding that it would draw adverse inferences against the defendant corporation if former employees refused to answer specific, legitimate, relevant questions on the basis of a confidentiality agreement. Id. The court provided a safe harbor for the defendant, on the condition that it notify its former employees that no unfavorable consequences would occur if they revealed information pertinent to those specific topics. Id.

McGrane was a contract case. In McGrane, the plaintiff sued the defendant employer for allegedly preventing him from pursuing reports of financial wrongdoing within the defendant company. The plaintiff raised state law claims of breach of contract and violation of the New York "whistleblower" statute. The plaintiff also alleged that he was coerced to sign a commitment not to share any of the defendant's illegal accounting activities.

The court criticized the vague and conclusory nature of the plaintiff's complaint, which apparently did not meet even the lenient notice requirements of

Federal Rule of Civil Procedure 8, and granted the plaintiff 45 days to supplement it. The court further required the plaintiff to submit "concrete, specific details concerning any reports of wrongdoing." McGrane, 822 F.Supp. at 1052. The court noted that, although the plaintiff may have been coerced to agree to conceal illegal behavior, no such agreement could be enforced against him. Id.

Neither Chambers nor McGrane considered the issue of discovery or confidentiality agreements in the specific context of the PSLRA. These cases discuss the general policy against allowing companies to contract to conceal illegal activity. This issue is not relevant here.[6] The PSLRA embodies a policy judgment by Congress to provide unique restrictions to plaintiffs' access to information in securities fraud cases. The PSLRA imposes demanding barriers on the pleading of securities fraud cases to guard against the risk of "plaintiffs [who] . . . file frivolous lawsuits in order to conduct discovery in hopes of finding a sustainable claim not alleged in the complaint." S. Rep. No. 104-08 at 14 (1995). The express purpose of the PSLRA is to require potential securities fraud plaintiffs to gather enough

---

[6] Plaintiffs allege specifically that *their informants* believe that the confidentiality agreements prohibit them from disclosing information. Plaintiffs do not allege that these agreements are actually overbroad, or that Spectrum has acted improperly to prevent current or former employees from sharing information. The broad policy statements discouraging such behavior in Chambers and McGrane do not apply.

information prior to filing to plead the facts of an alleged fraud, including facts that give rise to a strong inference of scienter, with specificity sufficient to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). <u>See, e.g.</u>, <u>Garfield v. NDC Health Corp.</u>, 466 F.3d 1255, 1262-63 (11th Cir. 2006). The PSLRA requires potential plaintiffs to meet this initial pleading requirement without access to significant discovery. <u>See</u> 15 U.S.C. § 78u-4(b)(3)(B) (imposing a mandatory stay of discovery during the pendency of any motion to dismiss). Thus, a discovery ruling pursuant to a timely motion in an age discrimination case, like that in <u>Chambers,</u> or a general policy discussion concerning the permissible scope of confidentiality agreements, as in <u>McGrane</u>, does not have any bearing on whether the Court should, in a securities fraud case, grant an untimely request, after the complaint has been dismissed, to issue an order concerning the scope of a confidentiality agreement whose provisions it has not had a chance to review.

In the present dispute, Plaintiffs have failed to provide the Court with a copy of the alleged confidentiality agreement, or even to provide testimony regarding its terms. If the Court interpreted an agreement without some idea of its actual terms, it could issue an impermissible advisory opinion. <u>See, e.g.</u>, <u>BankWest, Inc. v. Baker</u>, 446 F.3d 1358, 1364 (11th Cir. 2006) ("[A] case is moot with the issues

presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").[7]  Plaintiffs also have not told the Court what questions they would ask if the Court issued the order they request, thus magnifying the uncertainty inherent in their Motion.

Plaintiffs not only ask the Court to rule on confidentiality agreements without knowledge of their terms, but they do so at the eleventh hour.  Unlike <u>JDS</u>, where the plaintiffs notified the court, prior to dismissal of their complaint, of alleged impediments to their investigation, Plaintiffs here waited until after the Court dismissed their amended consolidated complaint to notify the Court of this alleged problem.  Plaintiffs have relied on the statements of their confidential informants throughout this litigation.  Only when the November 27 filing deadline

---

[7]  Plaintiffs argue that an order by this Court would not address the actual scope of the agreements, but rather the confidential witnesses' perception of the scope of the agreements.  Plaintiffs do not offer any authority to support their claim that the Court can issue an order to reassure unnamed potential witnesses, subject to an agreement whose terms the Court has never seen, to be asked questions on topics Plaintiffs have not revealed, that the unknown terms of the agreement will not be enforced against them if they answer freely Plaintiffs' unknown questions on unknown topics.  The Court cannot know whether such an order would cure any overbreadth or legal infirmity in the agreement, or whether it would inadvertently expose rightfully guarded confidential information.  In other words, it is impossible for the Court to issue an order likely to grant any actual relief in the present circumstances.

-14-

became imminent did Plaintiffs begin to suggest that confidentiality agreements had impeded their investigation the whole time.

      B.    <u>Lift of Discovery Stay</u>

      The PSLRA imposes an automatic stay of discovery once a motion to dismiss has been filed. 15 U.S.C. § 78u-4(b)(3)(B).  This automatic stay of discovery can be lifted only if the Court "find[s] upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." <u>SG Cowen Sec. Corp. v. U.S. Dist. Court for Northern Dist. of CA.</u>, 189 F.3d 909, 911 (9th Cir. 1999).  Plaintiffs argue that, in the absence of court-issued "assurances" protecting their confidential informants, they will suffer undue prejudice unless the Court grants them limited discovery to allow them to compel testimony from those informants.  Plaintiffs essentially argue that because information necessary to state a sustainable claim might be in the possession of one of the confidential informants, the Court should either encourage them to speak by "clarifying" unknown agreements or grant Plaintiffs the ability to compel testimony.

      The express purpose of the PSLRA is to prevent plaintiffs from engaging in discovery to find a basis for a sustainable claim.  Discovery in securities fraud

cases is, except in rare circumstances, permitted only *after* plaintiffs have met the

pleading standards of the statute.  JDS, 238 F.Supp. 2d at 1132-33.  Plaintiffs'

inability to meet the statutory pleading standards therefore cannot constitute

"undue prejudice" excusing normal operation of the statute.  Id. at 1133.  ("[A]s a

matter of law, failure to muster facts sufficient to meet the [PSLRA's] pleading

requirement cannot constitute the requisite 'undue prejudice'. . .").  See also In re

CFS-Related Sec. Fraud Lit., 179 F.Supp. 2d 1260, 1264 (N.D. Okla. 2001)

("Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot be

'undue' prejudice because it . . . is neither improper nor unfair.  Rather, it is

prejudice which has been mandated by Congress after a balancing of the various

policy interests at stake in securities litigation. . . .").[8]

---

[8]  Plaintiffs cite Anderson v. First Security Corp., 157 F.Supp. 2d 1230 (D. Utah 2001) to support their request to lift the PSLRA's mandatory discovery stay. In Anderson, a district court lifted a PSLRA discovery stay.  Id. at 1242.  The court dismissed the plaintiffs' complaint, but granted additional time for plaintiffs to take discovery and file an amended complaint.  Id. at 1241-42.

Three important distinctions exist between Anderson and the present case: (i) in Anderson, the plaintiffs requested a lift of the discovery stay during a hearing on the motion to dismiss, prior to the court's dismissal of the complaint; (ii) corporate officers of the defendant company agreed to testify to facts relevant to the litigation, but only if served with a valid subpoena; and (iii) the court, which apparently had the terms of the confidentiality agreement before it, was able to make a finding that the confidentiality agreement at issue precluded the plaintiffs from obtaining specific information prior to filing.  Id.

Plaintiffs' request in this case appears to be a last-minute maneuver to

Plaintiffs complain that they "are unable to plead their case because witnesses that they would normally be able to interview outside the scope of formal discovery believe they are prevented from cooperation by confidentiality agreements; and a subpoena may not be used (because of the stay) to assure those witnesses that liability under the confidentiality agreements may not attach because they are participating in 'formal' discovery." (Pls. Reply Br. at 10.)    "The [PSLRA] is . . . not to be a sword with which defendants can destroy the plaintiffs' ability to obtain information from third parties who are otherwise willing to disclose it." JDS., 238 F.Supp. 2d at 1134.  There is no indication that Spectrum seeks to take advantage of the PSLRA in this way.[9]

---

avoid–or at least delay–dismissal.  Plaintiffs have not represented that any confidential informant refuses to share information helpful to Plaintiffs' pleading burden.  The Court has not been presented with the alleged confidentiality agreement and cannot enter a finding that this agreement prevented Plaintiffs from obtaining information.

    Anderson is not only factually distinguishable, but also subject to flawed reasoning.  The defendants in that case argued that the PSLRA discovery stay "was intended to ensure that plaintiffs satisfy the Reform Act's heightened pleading standard before they have access to information or records through discovery," and that "Plaintiffs' inability to satisfy the heightened pleading requirements is not 'undue prejudice' sufficient to warrant lifting the stay." Id. at 1242.  This reasoning is persuasive, because it is consistent with Congress's express intentions in including an automatic discovery stay in the PSLRA.

    [9] For the reasons set forth in Section II.A of this Order, this Court cannot and should not interpret the unknown terms of whatever agreements exist.

C.    Motion for Extension of Time

Plaintiffs do not claim that any specific provision of a Spectrum confidentiality agreement is overbroad, or that Spectrum has prevented current or former employees from discussing any illegal behavior that may have occurred.  In the context of this specific case, Plaintiffs had actual knowledge of the factual pleading requirements of the PSLRA, particularly as this Court and the Eleventh Circuit applies that statute to channel stuffing cases.  Plaintiffs' counsel knew that they would be required to plead specific facts, particularly regarding scienter, for their complaint to survive. Rather than pleading such facts, or notifying the Court immediately regarding any impediments to their investigation, Plaintiffs sat silent until well after their amended consolidated complaint was dismissed and only five days remained to the November 27 amendment deadline.  Plaintiffs' request is simply too little, too late.

---

Plaintiffs have not presented any evidence that Spectrum has taken any action to impede their investigation.  For example, in Latourette v. First Horizon Pharm. Corp., Case No. 1:02-cv-2332 (N.D. Ga., July 13, 2003), a court in this district granted relief to securities fraud plaintiffs a in case where the defendant sent threatening "reminder" letters about confidentiality agreements to potential witnesses, deliberately chilling their willingness to speak.  Plaintiffs have not alleged any such interference by Spectrum.

In light of the Court's denial of Plaintiffs' request for a clarifying order or a lift of the mandatory discovery stay, Plaintiffs' request for an extension of time is moot. There is nothing further for Plaintiffs to do that they could not have done within the November 27 pleading deadline. Because no amended complaint was filed within the deadline, and the Court declines to grant the requested extension of time, the Court's dismissal is final. See, e.g., Garfield v. NDC Health Corp., 466 F.3d 1255, 1260 (11th Cir. 2006) ("[W]here an order dismisses a complaint with leave to amend within a specified period, the order becomes final . . . when the time period allowed for amendment expires.") (quoting Briehler v. Miami, 926 F.2d 1001, 1002 (11th Cir. 1991)). Plaintiffs admit that "in the absence of an extension, [any other] relief would be meaningless, as Plaintiffs would be unable to act. . . ." (Pls. Reply Br. at 12.)

Plaintiffs also argue that a time extension is necessary "to enable . . . forensic accountants to analyze recent news concerning Spectrum. [Specifically, on] November 14, 2006, . . . [Spectrum] took an asset impairment charge of $433 million to account for lost goodwill in its brand portfolio." This reason is not compelling. Plaintiffs have not informed the Court how the $433 million write-off is potentially relevant to their allegations against Spectrum, what potential facts

Plaintiffs expect to discover, or why the nearly two-week span of time between the date of Plaintiffs' discovery of the write-off and the November 27 filing deadline was not sufficient to complete their analysis.  See Young v. City of Palm Bay, Fla., 358 F.3d 859, 864 (11th Cir. 2004) ("In the courts, there is room for only so much lenity.  The district court must consider the equities not only to plaintiff and his counsel, but also to the opposing parties and counsel, as well as to the public, including those persons affected by the court's increasingly crowded docket.")[10]


III.    CONCLUSION

    **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Clarify [39] is **DENIED**.

    **SO ORDERED** this 18th day of May, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

    [10]  If Plaintiffs believe that the goodwill write-off is evidence of securities fraud, they can consider filing a new action.

-20-